U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
FEB - 6 2015
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LASONYA R. WILSON,          §
     PLAINTIFF,                §
                               §
VS.                          §     CIVIL ACTION NO. 4:13-CV-891-A
                               §
CAROLYN W. COLVIN,       §
ACTING COMMISIONER OF SOCIAL   §
SECURITY,               §
     DEFENDANT.            §

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.  STATEMENT OF THE CASE

Plaintiff Lasonya R. Wilson ("Wilson") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act ("SSA").    Wilson

protectively applied for DIB in February 2011, alleging that her disability began on September 2,

2010.  (Transcript ("Tr.") 11, 116-17.)  After her application for benefits was denied initially and

on reconsideration, Wilson requested a hearing before an administrative law judge ("ALJ").  (Tr.

11, 62-71.)  The ALJ held a hearing on June 25, 2012, and she issued an unfavorable decision on

July 24, 2012.  (Tr. 8-19, 24-57.)  On August 26, 2013, the Appeals Council denied Wilson's

request for review, leaving the ALJ's decision as the final decision of the Commissioner in her case. (Tr. 1-4.)  Wilson subsequently filed this civil action seeking review of the ALJ's decision.

## II.  STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq*., and numerous regulatory provisions.  *See* 20 C.F.R. Pt. 404.  The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520.  First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. § 404.1527.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.  *Id.* § 404.1520(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this

responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II.  ISSUES

In her brief, Wilson presents the following issues:

1.  Whether, at Step Two, the ALJ applied the proper legal standard in evaluating McMichael's back impairment and whether the ALJ's findings relating to her chest pain and obesity are supported by substantial evidence;

2.  Whether the ALJ erred in failing to explain her finding that Wilson required the use of an assistive device for standing and walking;

3.  Whether the ALJ erred in analyzing the opinions of Wilson's treating primary care physician and treating neurologist; and

4.  Whether the ALJ erred at Step Four in failing to explain or obtain evidence related to the mental and physical demands of Wilson's past relevant work.

(Plaintiff's Brief ("Pl.'s Br.") at 5-17.)

### III.  ALJ DECISION

In her July 24, 2012 decision, the ALJ found that Wilson met the insured status requirements of the SSA through December 31, 2015 and had not engaged in any substantial gainful activity since September 2, 2010, the alleged date of Wilson's onset of her disability. (Tr. 13.)  The ALJ further found that Wilson suffered from the severe impairments of multiple sclerosis and seizure disorder.  (Tr. 13.)  In making such a determination, the ALJ stated:

> The claimant has also alleged significant back problems.  However, imaging has shown no more than mild arthritic changes in her spine.  Clinical correlation has also been negative, as multiple evaluations (see discussion below) have shown no significant neurological deficits associated with claimant's lower back.
>
> I therefore find that this condition is not severe according to the standard enunciated in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and Social Security Ruling 85-28.

(Tr. 13-14 (internal citations omitted) (emphasis omitted).)

Next, the ALJ held that none of Wilson's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing.  (Tr. 14, 17.)  As to Wilson's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the inability to stand or walk more than a total of 4 hours in an 8-hour day; the need to use an assistive device while standing and walking; and the inability to work at heights or around hazardous machinery or vibration, with normal seizure precautions.

(Tr. 14 (emphasis omitted).)  Next, the ALJ found that Wilson was able to perform her past relevant work as a data entry clerk and administrative assistant.  (Tr. 18.)  Consequently, the ALJ concluded that Wilson was not disabled.  (Tr. 18-19.)

## IV.  DISCUSSION

### A.  **Step Two Issues**

Wilson first complains that the ALJ "misstated the evidence and failed to adhere to the 'de minimis' standard imposed by the Fifth Circuit and by controlling Social Security law in finding no severe back impairment." (Pl.'s Br. at 5.)  Wilson argues that this was, *inter alia*, "legally erroneous." (Pl.'s Br. at 7.) To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *cf. id.* §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05.  Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added).

In this case, it is clear that the ALJ applied the correct legal standard as she specifically cited to *Stone*. (Tr. 14.)  As set forth above, the ALJ, in analyzing whether Wilson's back impairment was severe, stated, "I therefore find that this condition is not severe according to the standard enunciated in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and Social Security

Ruling 85-28." (Tr. 14 (emphasis omitted).) Thus, the ALJ did not err in setting forth and applying the correct legal standard at Step Two.

Wilson also argues that substantial evidence does not support the ALJ's finding that Wilson's back impairment was not severe. (Pl.'s Br. at 8-9.) Wilson argues that the ALJ's statement that the imaging has shown "no more than mild arthritic changes in [Ms. Wilson's] spine" is erroneous. (Pl.'s Br. at 8.) Wilson claims that the clinical findings in the records as well as an August 2010 MRI and January 2011 x-ray show that Wilson's back impairment was severe. (Pl.'s Br. at 8.) Defendant, on the other hand, argues that the medical evidence of record supports the ALJ's finding that Wilson's back impairment was not severe.

As stated above, the ALJ specifically found at Step Two, *inter alia*, that Wilson's back impairment was not a severe impairment. In this case, it is clear that the ALJ was aware of and considered Wilson's back impairment throughout her decision. (*See, e.g.*, Tr. 13, 15-16, 18.) Based on all the evidence in the record, however, the ALJ determined that Wilson's back impairment was not a severe impairment. While the ALJ may have erred in not discussing all the evidence in the record relating to Wilson's back impairment, any error is harmless. *See Murrell v. Colvin*, No. 3:12-CV-3757-G (BN), 2013 WL 4623549, at *5 (N.D. Tex. Aug. 29, 2013) ("[E]ven if the ALJ's determination that Plaintiff's borderline intellectual functioning was not a severe impairment was error, Plaintiff cannot show the prejudice required for remand."). Wilson, although pointing to other evidence indicating that her back impairment caused her some leg weakness, decreased sensation reflexes, and muscle strength, has not presented any non-conclusory evidence showing how her back impairment impacted her ability to work in a manner not already accounted for in the ALJ's finding that her multiple sclerosis was severe (and caused some back issues) and in the RFC determination. *See Martinez v. Astrue*, No. 2:10-CV-0102,

2011 WL 4128837, at *9 (N.D. Tex. Sept. 9, 2011). The mere presence or diagnosis of some impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

Wilson also argues that the ALJ erred at Step Two by completely ignoring Wilson's chest pain even though she had been treated at the emergency room on at least four occasions for such pain. (Pl.'s Br. at 9.) However, as noted by Wilson, Robert Capper, M.D., a cardiologist, "ruled out myocardial ischemia as a possible etiology of [Wilson's] discomfort and . . . reassured her that her heart is normal" in February 2012. (Tr. 376; *see* Pl.'s Br. at 9.) Moreover, Wilson does not point to any evidence in the record indicating that her chest pain caused any work-related limitations beyond those already found by the ALJ in her RFC determination. Thus, remand is not required.

In addition, Wilson argues that the ALJ erred in not considering her chest pain and musculoskeletal impairments in combination with her obesity. (Pl.'s Br. at 9.) Contrary to Wilson's claims, however, the ALJ specifically considered and analyzed her obesity and ultimately found that "in this particular instance the claimant has failed to demonstrate specific limitations of any kind related to obesity." (Tr. 18.) In addition, the ALJ stated:

> None of the other limitations referenced by Social Security Ruling 02-1p appears to be present in this case. The evidence contains nothing limiting the claimant's ability to manipulate objects with the hands and fingers. Nor does there appear to be an inability to perform routine movement, to function adequately in a social setting, or to tolerate extreme heat, humidity, or hazards. There is no evidence that the claimant has sleep apnea or is excessively fatigued due to obesity. I therefore conclude that the limitations reflected in the RFC set forth herein sufficiently take into account any limits flowing from the claimant's obesity.

(Tr. 18 (emphasis omitted).) Based on the foregoing, it is clear that the ALJ considered Wilson's obesity in conjunction with her other impairments. Thus, the ALJ did not err, and remand is not required.

B. **Assistive Device**

Next, Wilson argues that the ALJ erred in failing to properly explain her finding in the RFC determination that Wilson required the use of an assistive device while standing and walking. (Pl.'s Br. at 9-11.) Wilson claims that the ALJ failed to specify whether this assistive device was a one-hand or a two-hand device and this distinction is critical for two reasons. (Pl.'s Br. at 9.) To begin with, Wilson argues that if she is required to use a two-hand assistive device, then she would have an inability to ambulate as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b) and would have met section 11.09 of the Listing. (Pl.'s Br. at 9-10.) Specifically, Wilson states:

> The ALJ found that Ms. Wilson did not have "persistent disorganization of motor function," as required to meet Listing 11.09, largely because she could ambulate effectively. (Tr. 17.) Therefore, the question of whether Ms. Wilson required a one-hand or two-hand assistive device is critical to the question of whether Ms. Wilson's impairments met listing 11.09.

(Pl.'s Br. at 10.)

Second, Wilson argues that "the question of whether [she] required a one or two-hand assistive device is essential to evaluating her ability to perform her past relevant work." (Pl.'s Br. at 10.) Specifically, Wilson states:

> The vocational expert testified that an individual who could stand only four hours, as stated by the ALJ, could perform only sedentary, not light work. (Tr. 52). This is consistent with SSR 83-10, which specifies that light work involves standing or walking 6 hours out of an 8 hour day and that the "primary difference between sedentary and most light jobs" is the number of hours spent walking or standing[].

If Ms. Wilson is limited to sedentary work and required to use an assistive device, there are further questions to evaluate. According to SSR 96-9p, "if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." However, "the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded."

(Pl.'s Br. at 10.)

As to the first issue, section 11.09 of the Listing states:

11. 09 *Multiple sclerosis.* With:

A. Disorganization of motor function as described in 11.04B;[1] or

. . . .

C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.[2]

---

[1] According to section 11.00C, "[p]ersistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and /or interference with the use of finger, hands, and arms." 20 C.F.R. Pt. 404, Subpt. P, App., 1, § 11.00C.

[2] Section 11.09C is described as follows:

Paragraph C provides criteria for evaluating the impairment of individuals who do not have muscle weakness or other significant disorganization of motor function at rest, but who do develop muscle weakness on activity as a result of fatigue.

Use of the criteria in 11.09C is dependent upon (1) documenting a diagnosis of multiple sclerosis, (2) obtaining a description of fatigue considered to be characteristic of multiple sclerosis, and (3) obtaining evidence that the system has actually become fatigued. The evaluation of the magnitude of the impairment must consider the degree of exercise and the severity of the resulting muscle weakness.

The criteria in 11.09C deals with motor abnormalities which occur on activity. . . .

Clarification of the evidence regarding central nervous system dysfunction responsible for the symptoms may require supporting technical evidence of functional impairment such as evoked response tests during exercise.

20 C.F.R. Pt. 404. Subpt. P, App. 1, § 11.00E.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.09 (footnotes added).  Contrary to Wilson's assertions, the ALJ did not find that Wilson did not meet section 11.09 of the Listing "largely because she could ambulate effectively." (Pl.'s Br. at 10; *see* Tr. 17.)  Instead, the ALJ appears to have based her finding with respect to section 11.09 of the Listing based, at least in part, on the fact that there was no clinical evidence or findings in the record of the following: (1) paresis, paralysis, tremor or other involuntary movements, ataxia or sensory disturbances that would show disorganization of motor function; (2) significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity or actual evidence that Wilson's system had become fatigued; (3) evoked response tests during exercise; and (4) descriptions of major motor seizures in the evidence.  (Tr. 17.)

As noted by Wilson, the ALJ also stated:

> The claimant reported to [Stella Nwankwo, M.D. ("Dr. Nwankwo"),] that she could walk without an assistive device 85% of the time.[3]  She testified at the hearing that she only needed a device when her MS was flaring up.  In my view these self-assessed factors negate the essential elements of *persistent disorganization of motor function* and *reproducible fatigue of motor function with substantial muscle weakness on repetitive activity.*

(Tr. 17.)  While such a statement does refer to Wilson's ability to ambulate, it does not state that this was the sole reason the ALJ found that Wilson did not meet section 11.09 of the Listing.

---

[3] The Court notes that Wilson claims that the ALJ's reliance on the statement by Dr. Nwankwo that Wilson was able to ambulate 85% of the time without an assistive device was misleading because this represents "Wilson's time at home, not her time outside of the home." (Pl.'s Br. at 11.)  According to Wilson, "Wilson told Dr. Nwankwo that she required a walker, cane, or wheelchair 90% of the time when she was outside her home." (Pl.'s Br. at 11.)  A review of Dr. Nwankwo's examination shows that Dr. Nwankwo recorded Wilson' ambulation history as follows:

> Below is the history as stated by the claimant.  She states she was diagnosed with multiple sclerosis 3½ years ago.  She ambulates with a cane, stroller, and wheelchair as per claimant.  She states she can walk about 85% of the time without any device.  She ambulates with device about 15 days of a month and about 90% of the time outside her house.

(Tr. 220.)

Contrary to Wilson's assertions, this statement does state that Wilson reported she can walk about 85% of the time without any device.  Albeit confusing, the 90% statement appears to refer to the fifteen days of the month when she is using a device.  Even assuming Dr. Nwanwko recorded the statement in error, the ALJ is bound by the evidence that appears in the record.

Instead, the majority of the ALJ's reason for her finding was that there was no non-conclusory[4] evidence in the record of the factors necessary to meet such section. This provides substantial evidence for the ALJ's decision regarding section 11.09 of the Listing. The ALJ's decision is not subject to reversal, even if there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Thus, any alleged error regarding Wilson's ability to ambulate would be harmless.

Moreover, with respect to the ALJ's finding in the RFC determination that Wilson needs to use an assistive device while standing or walking, the ALJ was obviously aware that Wilson used various assistive devices, including a walker, cane, and wheelchair. (*See, e.g.*, Tr. 14, 15.) In addition, the ALJ, regardless of her RFC determination that Wilson could perform light work with various limitations, ultimately determined at Step Four that Wilson was capable of performing her past relevant work as a data entry clerk and administrative assistant. (Tr. 18.) In making such a determination, the ALJ relied on the testimony of a vocational expert ("VE"). (Tr. 18.)

At the hearing before the ALJ, the ALJ asked the VE to assume the following: "a person has a light functional capacity and would need to use—stand and walk no more than four hours—but can stand and walk no more than four hours out of an eight-hour day, and would need to use an assistive device when standing and walking." (Tr. 51.) The VE testified that such a person would be able to perform Wilson's past relevant work as a data entry clerk and

---

[4] The ALJ rejected Dr. Gowdagere's January 5, 2012 opinions as to these issues, finding that there were "no clinical or diagnostic findings suggesting the level of limitation he posits." (Tr. 17.)

administrative assistant and that both jobs were sedentary in nature. (Tr. 52.) When the ALJ

asked if a person with that vocational profile would be able to do other jobs, the VE responded,

"Yes. Well, you—the RFC says light with four hours. I would be comfortable naming sedentary

jobs in that as light with an assistive device, a cane and/or walker." (Tr. 52.)

Based on this testimony, it is clear that the ALJ's reference in the RFC to the use of an

assistive device referred to a cane and/ or walker. In addition, any error relating to the ALJ's

RFC determination limiting Wilson to light work (as opposed to sedentary work) is harmless as

the ALJ, relying on the testimony of the VE, ultimately found that Wilson could perform her past

relevant work as a data entry clerk or administrative assistance, which were both sedentary in

nature, with the use of either a cane and/or walker. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th

Cir. 2007) (stating that ALJ's omission does not require remand unless it affected claimant's

substantial rights); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection

in administrative proceedings is not required" as long as the "substantial rights of a party have

[not] been affected.").

### D. **Treating Physicians**

#### 1. **Dwight Willett, M.D. ("Dr. Willett"), Treating Primary Care Physician**

Next, Wilson argues that the ALJ erred in rejecting the opinion of "[a]nother physician

(name illegible)." (Tr. 17.) Specifically, Wilson states:

> The physician's name (admittedly somewhat hard to read on this particular form)
> is Dwight Willett, Ms. Wilson's treating primary care physician. The ALJ's
> failure to properly identify the source of the opinion is critical, because Dr.
> Willett treated Ms. Wilson throughout the relevant time period, from September
> 2008 through January 2012. The ALJ rejects Dr. Willett's opinion in part because
> it "contains no specific dates of treatment", yet the treatment notes of record
> clearly demonstrate Dr. Willett's treatment of Ms. Wilson throughout the relevant
> time period. Because the ALJ failed to identify the source of Dr. Willett's
> November 2011 opinion, she did not give this opinion the deference to which it
> was entitled.

In addition, because the ALJ failed to identify Dr. Willett as a treating physician, she failed to consider the actual clinical findings upon which the opinion was based. The ALJ found that the "illegible physician's" opinion was not accompanied by any clinical findings. To the contrary, it was accompanied by four years worth of medical treatment and examination notes. The ALJ's failure to properly identify the source of Dr. Willett's medical opinion led her to improperly discount this critical piece of evidence.

. . . .

The ALJ clearly dismissed the "illegible" opinion because she did not understand that it came from a critical source—Ms. Wilson's treating primary care physician. An ALJ may reject the opinion of a treating physician, but she may not do so for the wrong reasons. The ALJ's failure to properly identify the source of Dr. Willett's November 2011 opinion requires remand for further consideration.

(Pl.'s Br. at 11-13 (internal citations omitted).)

Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564,568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In a partially filled out one-page document signed on November 29, 2011, Dr. Willett opined that Wilson's disability is permanent and Wilson has seizures frequently. (Tr. 319.) In addition, Dr. Willett diagnosed Wilson with multiple sclerosis and seizures. (Tr. 319.) While the ALJ erred in stating that such document was signed by a physician whose name is illegible, any error is harmless. To begin with, as to Dr. Willett's opinion that Wilson is permanently disabled, the determination of disability is an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) ("[T]he ALJ has sole responsibility for determining a claimant's disability status."). As to Dr. Willet's statement that Wilson has seizures frequently and diagnosis of multiple sclerosis and seizures, the ALJ incorporated such statements by finding that Wilson suffered from the severe impairments of multiple sclerosis and seizure disorder and included limitations in the RFC determination to account for such impairments. (Tr. 13, 16.)

Moreover, while the ALJ may have erred in failing to properly consider the opinion of Dr. Willett, substantial evidence supports the ALJ's determination. In making her RFC determination, the ALJ relied, *inter alia*, on the following evidence in the record: (1) a June 16, 2011 consultative examination performed by Dr. Nwankwo (Tr. 15, 17; *see* Tr. 220-24); (2) a January 6, 2011 examination by Candice Winful, M.D. (Tr. 15; *see* Tr. 310); (3) a Physical Residual Functional Capacity Assessment dated September 20, 2011 from State Agency Medical Consultant Robin Rosenstock, M.D. ("SAMC Rosenstock").[5] (Tr. 18; *see* Tr. 225-33). Because substantial evidence supports the ALJ's RFC determination, any error relating to the failure of the ALJ to properly analyze Dr. Willett's opinions would be harmless error. *Mays*, 837 F.2d at 1364; *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *Lumar v. Colvin*, No. 4:13-cv-836-O,

---

[5] The ALJ stated that she was giving SAMC Rosenstock's opinion "some evidentiary weight." (Tr. 18.)

14

2015 WL 181778, at *6 (N.D. Tex. Jan. 14, 2015) (Because there was substantial evidence in the record supporting the ALJ's RFC and disability determination, "any error relating to the failure of the ALJ to properly analyze [the treating physicians'] opinions would be harmless error"); *McNeal v. Colvin,* No. 3:11–CV–02612–BH–L, 2013 WL 1285472, at *27 (N.D. Tex. Mar.28, 2013) (applying harmless error analysis to the ALJ's improper evaluation of opinion of treating physician); *Bornette v. Barnhart,* 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (in the Fifth Circuit, harmless error exists when it is inconceivable that a different administration conclusion would have been reached absent the error).

### 2. Treating Neurologist Shiraram Gowdagere, M.D. ("Dr. Gowdagere")

Wilson also argues that the ALJ erred in rejecting the opinion of Dr. Gowdagere, Wilson's treating neurologist, without analyzing the factors set forth in 20 C.F.R. § 1527(c). (Pl.'s Br. at 13-15.) In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis of 20 C.F.R. § 404.1527(c), the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also* SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) only if there is no

reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than the another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

As to Dr. Gowdagere's January 5, 2012 form, the ALJ did reject such opinion, stating that he could not give such opinion "more than minimal evidentiary weight." (Tr. 17; *see* Tr. 327-30.) However, the Court concludes that the ALJ did properly analyze his opinion pursuant to the factors set forth in 20 C.F.R. § 404.1527(c) before rejecting such opinion. As to factor one, the ALJ indicated that he had "reviewed [Dr. Gowdagere's] treatment records in great detail" (Tr. 17) and referenced such treatment records in the ALJ decision (Tr. 16 (referring to Exhibit 9F p. 9) and Tr. 17.) As to factor two, the ALJ was obviously aware that Dr. Gowdagere was a treating physician as she set forth the law regarding rejecting the opinion of a treating source immediately prior to stating that she was giving Dr. Gowdagere's January 2012 opinion no more than minimal evidentiary weight. (Tr. 17.) As to factors three, four, and six, the ALJ set forth much of the other medical evidence in the record and explained that she was rejecting

Dr. Gowdagere's opinions because they were "unsupported by the objective evidence" and "fail[ed] to assign a sufficient rationale for an opinion." (Tr. 17.) As to factor five, although the ALJ did not specifically mention that Dr. Gowdagere was a neurologist, it is clear that she, at least implicitly, knew this fact as Dr. Gowdagere's records which were referenced by the ALJ in his decision clearly indicate that Dr. Gowdagere is a neurologist.[6]  Because the ALJ properly considered the opinions of Dr. Gowdagere, remand is not required.

### E. **Step Four**

Wilson, citing to Social Security Ruling ("SSR") 82-62, also claims that the ALJ erred in failing to perform a step-by-step analysis of the physical and mental demands of Wilson's past relevant work. (Pl.'s Br. at 16-17.)  Specifically, Wilson states:

> [SSR 82-62] compels ALJs to obtain "detailed information" about the "mental demands and other job requirements" of prior jobs.  Further, the ruling explicitly requires that three specific factual determinations be made at step four, namely: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC would permit a return to the prior job.  The ALJ is required to set forth the rationale for his [past relevant work] findings in a way that clearly explains how the evidence led to his conclusions.

> The ALJ stated, "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed".  Yet, the ALJ made no findings and gave no explanation as to what the mental and physical demands of Ms. Wilson's past relevant work were.  Besides being a required finding to SSR 82-62, this issue is critical in Ms. Wilson's case because the vocational expert testified that she was confused as to the requirements of Ms. Wilson's past relevant work.

> The vocational expert, on whom the ALJ relies, testified that she could not accurately categorize Ms. Wilson's past work as an administrative assistant.  She stated that Ms. Wilson was not an administrative assistant as defined in the *Dictionary of Occupational Titles (DOT)*.  However, she did not feel comfortable classifying her past work as a general clerk, either.  The vocational expert stated

---

[6] For example, at the top of Dr. Gowdagere's January 5, 2012 form, it states on each page, *inter alia*, "Dr. SHIRARAM GOWDAGERE, SPECIALITY: NEUROLOGIST." (Tr. 327-30.)

that it was "difficult" to tell what Ms. Wilson actually did from the evidence in front of her. She asked the ALJ if she could leave the question unanswered due to her confusion.

The ALJ moved on without asking either the vocational expert or Ms. Wilson for further clarification; [s]he then accepted the vocational expert's testimony that an individual with the limitations she adopted could perform work as an administrative assistant, despite the fact that the vocational expert had just testified that she did not know whether this was actually Ms. Wilson's past relevant job. An ALJ may rely on a vocational expert in finding that a claimant can perform her past relevant work. However, an ALJ should not be allowed to rely on the testimony of a vocational expert who states that she has no idea what the claimant's past job actually entailed.

(Pl.'s Br. at 16-17 (internal citations omitted).)

Once the ALJ has made the RFC determination, the ALJ moves on to Step 4 of the disability analysis. At Step 4, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett,* 67 F.3d at 564. Past relevant work "is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). When determining at Step Four whether the claimant could perform his past relevant work, the ALJ is permitted to consult a VE. *See, e.g., Adams v. Astrue,* No. 08–0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a [VE] to find that [the claimant] was able to return to her past relevant work."); *Pierce v. Astrue,* No. 07–1294, 2008 WL 4373036, at *13 (E.D. La. Sept.22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony.") "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala,* 58 F.3d 129, 132 (5th Cir. 1995).

As noted above, the ALJ found at Step Four that Wilson could perform her past relevant work as a data entry clerk and administrative assistant. (Tr. 18.) Specifically, the ALJ stated:

> The vocational expert was asked to assume a hypothetical claimant with an age, educational level, previous work history and RFC identical to that possessed by this claimant. She was further asked to give an opinion as to whether the claimant can perform the same jobs which she held in the past. The VE testified that such a claimant could perform the above jobs. I find the VE's testimony persuasive and consistent with the evidence.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. She is therefore not disabled within the meaning of the Act.

(Tr. 18-19.) At the hearing before the ALJ, the VE listened to Wilson's testimony regarding what she did in her past jobs, *inter alia*, as a residential home manager, administrative assistant, computer lab assistant, home health care aid, and sales associate (Tr. 34-38.) The VE then went through the various jobs that Wilson had described, trying to classify them and pinpoint the DOT numbers associated with each. (Tr. 48-51.)

SSR 82–62 requires that when the ALJ has determined that a claimant retains the RFC to perform a past relevant job, the decision must contain the following specific findings: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82–62, 1982 WL 31386, at *4 (S.S.A. 1982). When determining whether a claimant retains the RFC to perform her past relevant work, the ALJ can look to either (1) the job duties peculiar to an individual job as the claimant actually performed it or (2) the functional demands and job duties of the occupation as generally required by employees throughout the national economy. SSR 82–61, 1982 WL 31387, at *1–2 (S.S.A. 1982).

19

In this case, the Court concludes that the ALJ, based on her "treatment of the record in its entirely and the VE's testimony at the administrative hearing," did comply with SSR 82-62. *See Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *11 (E.D. La. Sept. 22, 2008). Moreover, the Court does not need to determine whether the ALJ erred in relying on the VE's testimony that Wilson could perform her past relevant work as an administrative assistance because the ALJ also determined that she could perform her past relevant work as a data entry clerk. Thus, even assuming that the ALJ erred at Step Four in relying on the VE's testimony that she could perform her past relevant work as an administrative assistance, any error is harmless because the ALJ also found that Wilson could perform another job. *See Hallcy v. Astrue*, No. 5:09-CV-135-BG, 2010 WL 2605214, at *3 (N.D. Tex. May 27, 2010) ("[E]ven if the court were to assume, *arguendo*, that the ALJ's determination that [the claimant] could perform past work as a cashier was reached in error, any error must be considered harmless because the ALJ determined that she could perform another job she worked at in the past.") Thus, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28

U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 20, 2015**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 6, 2015.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

21